UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THERESA R.,[1] | ) |
|                 Plaintiff, | ) No. 21 CV 259 |
| v. | ) Magistrate Judge Young B. Kim |
| MARTIN J. O'MALLEY, Commissioner of Social Security, | ) |
|                 Defendant. | ) January 16, 2024 |

**MEMORANDUM OPINION and ORDER**

Theresa R. seeks disability insurance benefits ("DIB") asserting that she is disabled by coronary artery disease, hypertension, status post cerebrovascular accident, cervical degenerative disc disease, diabetes mellitus, fibromyalgia, and obesity. She brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her DIB application. Before the court are cross-motions for summary judgment. For the following reasons, Theresa's motion is denied, and the government's is granted:

**Procedural History**

Theresa filed a DIB application in September 2018, alleging disability beginning in February 2018. (Administrative Record ("A.R.") 27, 171.) At the administrative level, her application was denied initially and upon reconsideration. (Id. at 27, 83-91, 93-103.) Theresa appeared with her attorney at the January 2020

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Theresa's first name and last initial in this opinion to protect her privacy to the extent possible.

hearing before an Administrative Law Judge ("ALJ"), and she and a vocational expert ("VE") testified. (Id. at 50-82.) The ALJ ruled in March 2020 that Theresa is not disabled. (Id. at 27-41.) The Appeals Council denied Theresa's request for review, (id. at 1-6), making the ALJ's decision the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Theresa then filed this lawsuit seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 8).

## Analysis

Theresa argues that the ALJ erred by rejecting the opinions of her treating rheumatologist, Dr. Laarni Cruz Quimson. (R. 25, Pl.'s Mem. at 8-13.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and the decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ must "provide a logical bridge between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (internal quotation and citation omitted). Put another way, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's

2

limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Having considered the parties' arguments and the record, the court concludes that the ALJ supported his treatment of Dr. Quimson's opinions with substantial evidence.

Theresa asserts that the ALJ erred by favoring state agency reviewing physicians' opinions over Dr. Quimson's opinions. (R. 25, Pl.'s Mem. at 8.) She applied for DIB after March 27, 2017, so the new regulations for considering medical opinions apply here. (A.R. 27.) Under the new regulations, the ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must determine the persuasiveness of all medical opinions in the record by considering and explaining the most important factors—supportability and consistency. *Id.* §§ 404.1520c, 416.920c(b)(2); *see also Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The supportability factor requires consideration of the objective medical evidence and explanations presented and used by the medical source. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor requires the ALJ to consider and explain how the medical opinion is consistent with all other medical and nonmedical sources. *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2). After assessing these factors, the ALJ may, but is not required to, explain how he considered three other factors in his analysis—the medical source's relationship with the claimant and specialization, and other factors that tend to support or contradict the source's opinion. *Id.* §§ 404.1520c, 416.920c(b)(2).

3

At step two, the ALJ found "persuasive" the opinion of the state agency psychological consultant, who determined that Theresa's anxiety was non-severe and she suffered only mild limitations in the four mental functioning areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (A.R. 30-31 (citing id. at 98-99).) The ALJ explained that Theresa's own reports about her functioning and daily activities,[2] as well as her "presentation during treatment and lack of specific mental health treatment," support the psychological consultant's opinion. (Id. at 32.) As such, the ALJ did not include any mental restrictions in Theresa's residual functional capacity ("RFC"). (Id. at 33.)

When assessing Theresa's physical limitations, the ALJ found "somewhat persuasive" the state agency reviewing physicians' opinions that Theresa could perform light work because "normal" physical examinations and daily activities support these opinions. (Id. at 33, 39-40 (citing id. at 88-89, 100-01).) The ALJ cited medical records that the reviewing physicians referenced in their opinions, including Theresa's March 2018 hospital follow-up visit noting improved pain and movement and an "essentially normal" physical examination, (id. at 40, 343, 463), a November 2018 consultative examination showing normal grip strength and fine/gross

---

[2] For example, the ALJ noted Theresa's reports that she follows instructions "well," interacts "alright" with authority figures, and enjoys going to movies and out for dinner, although she said she does not engage in these activities "much at all." (A.R. 30-31 (citing id. at 224-26); see also id. at 246.) She also manages bank accounts and drives, albeit "very seldom[ly]." (Id. at 31 (citing id. at 223); see also id. at 244.)

4

manipulating but some mild weakness in her right arm and leg and difficulty squatting and standing on toes, (id. at 40, 345-47), and a neck x-ray from the same month showing moderate degenerative changes at three levels and straightening of the spinal curve, (id. at 40, 355).[3] The ALJ also took into account the daily activities Theresa said she can perform, including coloring for an hour two to three times a week, preparing simple meals, watching television, driving, and managing bank accounts. (Id. at 39-40.) However, the ALJ did not find the reviewing physicians' opinions fully persuasive because he determined that additional limitations were warranted, including avoiding concentrated exposure to extreme cold and heat and frequent vibration, and frequently reaching, overhead reaching, handling, and fingering. (Id. at 33, 40.)

The ALJ similarly found that Dr. Quimson's opinions had varying degrees of persuasiveness. (Id. at 38-39.) The ALJ noted at the outset that Theresa switched

---

[3] The ALJ also pointed to other medical records supporting the reviewing physicians' opinions. (A.R. 40 (citing id. at 308 (February 2018 mostly normal examination, with likely acute cervical sprain), 595 (March 2018 MRI revealing spinal canal stenosis but negative for acute cord edema, syrinx, myelomalacia, and cervical nerve root compression), 647 (May 2018 physical therapy assessment noting improvement in range of motion in cervical spine and shoulders, with decreased pain, muscle spasm, and cervical tenderness), 696 (July 2018 treatment record noting good range of motion and no swelling or tenderness), 300 (October 2018 MRI negative for acute cerebrovascular accident), 347-52 (November 2018 consultative examination noting difficulty squatting, standing on toes, and hopping on one leg but normal grip strength, grasping, and manipulating), 773 (February 2019 treatment record noting no edema and full range of motion), 1060 (June 2019 examination noting full range of motion in shoulders, elbows, wrists, knees, and ankles but myofascial tenderness in forearms, biceps, shoulders, and neck), 487-89 (September 2019 physical examination revealing normal gait and range of motion in lower extremity and 5/5 strength), 1307-08 (December 2019 treatment record revealing full range of motion but soft tissue tenderness in back, upper extremities, and neck)).)

rheumatologists to Dr. Quimson in December 2019 and only visited her once before Dr. Quimson rendered her January 2020 opinions. (Id. at 37-38; see also id. at 1308 (noting Theresa was "inquir[ing] about her disability forms" and discussing Dr. Quimson only being able to "write down [Theresa's] reported symptoms").) At the December 2019 visit Theresa used a cane, but the following month Dr. Quimson found the cane unnecessary. (Id. at 38-39; see also id. at 345 (noting that Theresa had non-antalgic gait without use of assistive devices); 760 (opining that Theresa would not need to use cane while engaging in occasional standing or walking).) The ALJ deemed this opinion "persuasive" because Theresa did not have a prescription for the cane and the objective medical evidence revealed "numerous references to [Theresa's] normal gait and lower extremity strength." (Id. at 38-39.)

Next, the ALJ found "somewhat persuasive" Dr. Quimson's opinion that Theresa should "[a]void extreme cold or heat," explaining that Theresa's "testimony and evidence of fibromyalgia pain" supported the limitation, although not to the extent Dr. Quimson prescribed. (Id. at 39.) The ALJ dismissed the remainder of Dr. Quimson's opinions, including that Theresa's pain and treatment effects would cause her to miss more than four to five days of work per month, interfere with concentration to such an extent that she would not be able to perform even simple tasks, and require her to shift positions at will. (R. 25, Pl.'s Mem. at 9-10; see also A.R. 757-61).) The ALJ found such opinions "unpersuasive" because they were based on Theresa's reports, (see id. at 39, 761, 1308), and lacked support from the record given Dr. Quimson's "normal physical findings" during her examination of Theresa,

6

(id. at 39, 1307-08 (noting on exam that Theresa was in "no acute distress" and although she had "diffuse soft tissue tenderness along back, upper extremities, neck," she had full range of motion in shoulders, elbows, wrists, hips, knees, and ankles)). The ALJ further noted that Dr. Quimson's opinions were not consistent with other examinations from the applicable period. (Id. at 39.)

Theresa contends that the ALJ erred in "rejecting most of Dr. Quimson's opinion in favor of two [s]tate agency record-reviewers who did not examine [Theresa], were not specialists, did not review Dr. Quimson's opinion or more recent treatment, and only assessed limitations due to [Theresa's] heart failure." (R. 25, Pl.'s Mem. at 8.) But under the new regulations, the ALJ was not permitted to give controlling weight to any opinion, including from a treating physician. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, as discussed, the ALJ was required to consider the supportability and consistency of Dr. Quimson's opinions with the record, and then explain the persuasiveness of the opinions in light of these most important factors. *Id.* §§ 404.1520c, 416.920c(b)(2); *see also Albert*, 34 F.4th at 614. Here, the ALJ did just that—and he supported his determinations with substantial evidence. *See Ellison v. Kijakazi*, No. 22-3134, 2023 WL 8794989, at *3 (7th Cir. Dec. 20, 2023) (finding that ALJ did not err by discounting medical opinions that were "conclusory and not supported by any clinical basis" (internal quotations and citation omitted)).

Theresa also asserts that the ALJ overlooked evidence. (R. 25, Pl.'s Mem. at 10.) She contends the ALJ did not explain "why he thought Dr. Quimson's opinion was based merely on [Theresa's] statements." (Id.) But the ALJ cited Dr. Quimson's

7

RFC questionnaire in finding that "per [Theresa's] own report, she could not walk a block without pain[,] she could sit for 30 minutes at a time[,] and she could stand for 15 minutes at a time." (A.R. 38 (citing id. at 757-61).) In the corresponding portion of her opinion, Dr. Quimson included a handwritten note stating, "Patient reports." (Id. (citing id. at 759).) Moreover, in her treatment notes Dr. Quimson indicated she discussed with Theresa that "we can only write down her reported symptoms" in disability forms because a fibromyalgia diagnosis requires a specific test. (Id. at 39 (citing id. at 1308).) As such, Theresa's argument lacks merit.

Theresa next argues that the ALJ disregarded the Commissioner's policy regarding consideration of a claimant's fibromyalgia and failed to consider the consistency between Dr. Quimson's fibromyalgia-related findings on examination and Theresa's symptom statements. (R. 25, Pl.'s Mem. at 10). She asserts that Dr. Quimson's findings of "diffuse soft tissue tenderness" are consistent with the Commissioner's fibromyalgia policy, which recognizes "widespread pain in the joints, muscles, tendons, or nearby soft tissues," with "tender points" as a key characteristic of the condition. (R. 25, Pl.'s Mem. at 10 (quotations and citation omitted).) But while the ALJ acknowledged records showing Theresa had tender points, the same examinations also revealed normal range of motion, muscle strength, and grip strength. (R. 27, Govt.'s Mem. at 7-8 (citing A.R. 35-37, 347, 352, 696, 828, 1061, 1307-08).) Having considered the record as a whole regarding Theresa's fibromyalgia, the ALJ adequately explained why he discounted Dr. Quimson's findings regarding the effects of Theresa's fibromyalgia. (A.R. 37); *see also Ellison*, 2023 WL 8794989,

8

at *3 (recognizing that "for fibromyalgia cases . . . [a]lmost any conclusion an ALJ reaches . . . may be inconsistent with some evidence in the record and consistent with other evidence" (internal quotations and citation omitted)). Although Theresa disagrees, the court cannot reweigh the evidence. *See Deborah M.*, 994 F.3d at 788.

Finally, Theresa contends the ALJ committed an error of logic by finding persuasive certain aspects of Dr. Quimson's opinions, while deeming the rest unpersuasive. (R. 25, Pl.'s Mem. at 11.) But an ALJ is permitted to deem persuasive only those aspects of an opinion that are supported by and consistent with the evidence, as is the case here. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2).

## Conclusion

For the foregoing reasons, Theresa's motion is denied and the government's is granted.

                                      **ENTER:**

                                      _/s/ Young B. Kim_
                                      **Young B. Kim**
                                      **United States Magistrate Judge**